1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   SUSAN B. LONG, et al.,

10             Plaintiffs,

11       v.

12   UNITED STATES INTERNAL
     REVENUE SERVICE,
13

14             Defendant.

No. C74-724P

ORDER GRANTING
PLAINTIFF'S MOTION
MOTION TO ENFORCE
CONSENT ORDER

15          This matter comes before the Court on Plaintiff Susan B. Long's Motion to Enforce

16   Consent Order Against Defendant United States Internal Revenue Service.  (Dkt. No. 8).

17   Having reviewed the papers and pleadings submitted by the parties, and finding that oral

18   argument is not necessary to decide this motion, the Court GRANTS Plaintiff's motion.

19          Within 14 days of the date of this order, Defendant is ORDERED to supply Ms. Long

20   with copies of any monthly, quarterly, and year-end AIMS Table 37 reports for fiscal years 2002,

21   2003, 2004, and 2005, as well as any monthly and quarterly reports for fiscal year 2006 that have

22   been compiled as of the date of this order.  Consistent with the terms of the Consent Order

23   entered by this Court in 1976, Defendant shall, on an ongoing basis and upon proper request by

24   Ms. Long, promptly make available to her for inspection and copying copies of the AIMS Table

25   37 reports, as long as the agency continues to compile such reports.  The Court further finds that

26   Ms. Long is entitled to an award of her reasonable attorney fees and costs in bringing this

ORDER
PAGE – 1

1   motion.  Plaintiff shall file and serve a motion for attorney fees and costs no later than 30 days

2   from the date of this order.

3          The reasons for the Court's ruling are set forth below.

4                                          **Background**

5          In 1974, Ms. Long and her now-deceased husband Philip Long filed this action under the

6   Freedom of Information Act (FOIA) to obtain statistical information from the Internal Revenue

7   Service (IRS).  On July 23, 1976, the Court entered a Consent Order in this matter.  Paragraph 3

8   of the Consent Order provided that the IRS:

9          [W]ill, upon proper request by plaintiffs, make all statistical data regardless of the format
           or particular categorization which are hereafter compiled and are similar to that contained
10         in Document 5301, Document 5302, Quarterly Statistical Reports, Report NO-CP:A-68,
           or in any of Reports NO-CP:A-231 through -260 promptly available to the plaintiffs for
11         their inspection . . . . However, it is neither the intent nor purpose of this order that the
           defendant be required to compile in future years the statistical data which presently
12         appear in the aforementioned reports.

13  The Consent Order further provided in Paragraph 4 that the IRS:

14         [S]hall, upon proper request by plaintiffs, promptly furnish copies of the records referred
           to in . . . paragraph 3, to the extent such records are compiled in the future . . . .
15
    The Consent Order has not been modified or vacated since its entry in 1976, nor does the order
16
    contain any provisions limiting its duration.
17
           On January 5, 2006, Ms. Long filed this motion to enforce the Consent Order.  Based on
18
    the parties' representations, it appears that the IRS no longer compiles a number of the reports
19
    specifically named in the 1976 Consent Order.  However, Ms. Long maintains that the IRS now
20
    regularly produces a report – known as Audit Information Management System (AIMS) Table
21
    37 – that contains statistical data similar to the data that had been contained in Report NO-CP:A-
22
    232, a report referenced in the 1976 Consent Order.  Since 2004, Ms. Long has repeatedly
23
    requested that the IRS provide her with copies of AIMS Table 37 reports from fiscal year 2002
24
    forward.  See, e.g., Dkt. 9, Ex. 9 (November 8, 2004 letter from Ms. Long).  The IRS has not
25
    provided this information to Ms. Long.
26

    ORDER
    PAGE – 2

1

**Analysis**

2

1.    Enforceability of Consent Order

3

      "A district court retains jurisdiction to enforce its judgments, including consent decrees."

4

Hook v. State of Arizona Dept. of Corrections, 972 F.2d 1012, 1014 (9th Cir. 1992).  Consent

5

decrees are "essentially contractual agreements" and contract principles are generally applicable

6

in construing and enforcing such agreements.  Id.   Unless its terms provide otherwise, a consent

7

order generally remains in force unless it is modified or vacated through a motion under Fed. R.

8

Civ. P. 60(b).  Id. at 1016.  Consistent with these rules, it is undisputed that the 1976 Consent

9

Order remains in effect and that this Court retains jurisdiction to enforce the order.

10

2.    Similarity Between Statistical Data Contained in Report NO-CP:A-232 and Data
      in AIMS Table 37

11

12

      Paragraph 3 of the Consent Order requires the IRS to "make all statistical data . . . which

13

are hereafter compiled and are similar to that contained" in Report NO-CP:A-232 promptly

14

available to Ms. Long upon proper request.  There is no serious question that AIMS Table 37

15

contains statistical data that are similar to the data contained in Report NO-CP:A-232.  Plaintiff

16

maintains and Defendant does not dispute that both reports provide statistical data on IRS

17

examination of tax returns, specifying types of returns examined, hours spent on examination,

18

additional dollars of taxes recommended, dollars of additional taxes per return examined and

19

hour of examination, and percentage of returns for which no additional taxes were recommended.

20

      The IRS does not directly dispute that statistical data in AIMS Table 37 are "similar" to

21

the data that had been contained in Report NO-CP:A-232.  However, the IRS notes that Table

22

37 contains some data that had not been not included in Report NO-CP:A-232 and argues that

23

"[r]equiring the IRS to provide more data than it was required to provide under the consent

24

order subjects it to a burden not contemplated at the time of its entry."  (Dkt. No. 17 at 9).

25

      The IRS's argument is not persuasive.  By its terms, the Consent Order requires the IRS

26

to provide Ms. Long with data "similar" to the data contained in Report NO-CP:A-232, to the

ORDER
PAGE – 3

1   extent that the IRS continues to compile such data.  As a result, the fact that AIMS Table 37

2   contains some data that had not been included in Report NO-CP:A-232 does not put Table 37

3   outside the scope of Consent Order; the data contained in the two reports need not be identical in

4   all respects in order to be "similar."  In addition, Ms. Long maintains that of the numbers in Table

5   37 that are not also contained in Report NO-CP:A-232, most if not all either can be derived

6   arithmetically from the data in Report NO-CP:A-232 or can be found in other reports included in

7   the Consent Order.

8       Therefore, the Court finds that the statistical data in AIMS Table 37 is sufficiently similar

9   to the data contained in Report NO-CP:A-232 to come within the scope of the Consent Order.

10  3.   Applicability of 26 U.S.C. § 6103

11      The IRS argues that it is precluded by 26 U.S.C. § 6103 from making AIMS Table 37

12  available to Ms. Long.  This statute, which was amended shortly after the Consent Order was

13  entered, generally prohibits disclosure of a taxpayer's "return information."  In relevant part, the

14  statute defines "return information" as:

15      [A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts,
        deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld,
16      deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is
        being, or will be examined or subject to other investigation or processing, or any other
17      data, received by, recorded by, prepared by, furnished to, or collected by the Secretary
        [of the Treasury] with respect to a return or with respect to the determination of the
18      existence, or possible existence, of liability (or the amount thereof) of any person under
        this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense. . . .
19
20  26 U.S.C. § 6103(b)(2)(A).  However, "return information" under the statute "does not include

21  data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a

    particular taxpayer."  26 U.S.C. § 6103(b)(2).
22
23      The IRS contends that AIMS Table 37 contains "return information" as defined by the §

24  6103.  The IRS does not argue that Table 37 contains information that directly identifies any

    taxpayer.  Instead, the IRS asserts that Table 37 sometimes may include "cells of one" – that is,
25
    cells indicating that only one unnamed taxpayer within a particular data field had been audited.
26

ORDER
PAGE – 4

1   The IRS argues:

2       [S]tatistical tables that contain "cells of one" taxpayer [data] may not be disclosed
        without running afoul of section 6103. . . . Table 37 contains certain fields where
3       (because of the combination of the industry described and the income level – such as
        Fortune 500 companies) it would be possible for "persons in the relevant community" to
4       use information in the table, in conjunction with publicly available information, such as
        press releases, public SEC or judicial filings and other information on the Internet, to
5       identify a specific taxpayer.

6   (Dkt. No. 17 at 10-11).  In response, Plaintiff disputes that Table 37 categorizes taxpayers by

7   particular industry or by whether they are Fortune 500 companies, arguing that "[t]he report's

8   categories are broad enough that even if a cell in Table 37 contained information about only one

9   audit, a reader would not be able to identify the taxpayer unless he already knew that the

10  taxpayer had been audited in the relevant time period."  (Dkt. No. 19 at 6).

11          On the record before it, the Court finds that § 6103 does not relieve the IRS of its

12  obligation under the Consent Order to provide AIMS Table 37 to Ms. Long upon proper

13  request.  First, as Plaintiff notes, consent orders are enforceable despite changes in law, unless

14  they have been properly modified or vacated under Fed. R. Civ. P. 60(b).  See, e.g., Hook v.

15  State of Arizona Dept. of Corrections, 972 F.2d 1012, 1017 (9th Cir. 1992) ("Even if the law

16  underlying the consent decree no longer appears to support the decree, a party cannot disobey

17  the decree without bringing a Rule 60(b) motion to modify or vacate the decree").  Here, the IRS

18  has not sought to modify or vacate the consent decree pursuant to Rule 60(b).

19          Second, the IRS's position that production of AIMS Table 37 could indirectly reveal

20  taxpayers' "return information" is speculative at best.  Aside from conclusory assertions, the IRS

21  provides no evidence to support its contention that a "cell of one" in Table 37 could provide

22  sufficient information to identify the particular taxpayer whose data is included in the cell.  The

23  IRS's position is further undermined by evidence that the IRS has previously provided Ms. Long

24  with data compilations that included "cell of one" entries.  Indeed, Ms. Long asserts that "[s]ince

25  the Consent Order was entered, on many occasions extending up through March 2004 – the last

26  release before the IRS started refusing to provide audit statistics to me – the IRS has furnished

ORDER
PAGE – 5

1  me thousands of pages of statistical tables containing results from audits that contained cell sizes

2  of only '1.'" (Dkt. No. 20 ¶ 9).

3      Finally, even assuming for the sake of argument that "cell of one" entries in AIMS Table

4  37 may indirectly reveal a taxpayer's "return information," the IRS could redact such entries.

5  Although the IRS asserts that "the burden on the agency to conduct a line-by-line review of

6  Table 37 on a monthly basis would be inordinate," (Dkt. No. 17 at 11), such a bare contention is

7  insufficient to demonstrate that redaction is not feasible.

8  4.   Production of Annual Data Book

9      The IRS also suggests that it is currently in compliance with the Consent Order because

10  Ms. Long "has been provided with the Annual Data Book, which provides most of the data

11  plaintiff received in the year end Quarterly Statistical Reports, and much more." (Dkt. No. 17 at

12  9).  However, Plaintiff notes that the 1976 Consent Order identified many specific reports other

13  than the Quarterly Statistical Reports.  As a result, production of the Annual Data Book does not

14  relieve the IRS of its obligation to produce, upon proper request, existing compilations that

15  contain statistical data that are similar to the data contained in the other reports identified in the

16  Consent Order.

17  5.   Frequency of Requests

18      The IRS also contends that Plaintiff is not entitled under the Consent Order to request

19  data on a monthly basis, asserting that "[t]here is nothing in the order . . . which supports this."

20  (Dkt. No. 17 at 9-10).  However, the Consent Order does not contain any provisions that restrict

21  the frequency of Ms. Long's requests.  By its terms, the order provides that "all statistical data"

22  similar to that in the reports thereafter compiled by the IRS will be made available to Ms. Long

23  "upon proper request," without limiting the number or frequency of such requests.    As a result,

24  Ms. Long is not precluded under the terms of the order from requesting information on a

25  monthly basis.

26

6.     Attorney Fees and Other Litigation Costs

Plaintiff requests an award of her reasonable attorney fees and costs in bringing this motion, in an amount to be established later.  As Plaintiff notes, FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E).  The IRS offers no substantive response to Plaintiff's request for fees and costs.

An award of attorney fees and costs to the prevailing party in a FOIA action is not mandatory.  Instead, "[t]he legislative history of the FOIA makes it clear that Congress did not intend an award of attorney's fees to be automatic; rather the trial court 'must weigh the facts of each case against the criteria of the existing body of law on the award of attorney fees and then exercise its discretion in determining whether an award is appropriate.'"  Church of Scientology of California v. U.S. Postal Serv., 700 F.2d 486, 492 (9th Cir. 1983).  Therefore, "[i]n order to receive an award of fees, a prevailing party in a FOIA action must demonstrate both *eligibility* for and *entitlement* to such a recovery."  Long v. IRS, 932 F.2d 1309, 1313 (9th Cir. 1991) (emphasis in original).

To satisfy the eligibility prong, "the plaintiff must present 'convincing evidence' that two threshold conditions have been met: he must prove that (1) his filing of the FOIA action was necessary to obtain the information sought and (2) the action had a '*substantial causative* effect' on the ultimate receipt of that information."  Id. (emphasis in original).  Here, Ms. Long has presented convincing evidence that it was necessary to file this motion to obtain the information sought, given the IRS's previous refusals to provide such information after repeated requests by Ms. Long.  In addition, this motion obviously has had a "substantial causative effect" on the receipt of the information sought.

If a plaintiff satisfies the eligibility criteria, a district court may, in the exercise of its discretion, determine that the plaintiff is entitled to an award of fees.  Id.  In exercising this

ORDER
PAGE – 7

1  discretion, the Court must consider four criteria:

2      (1) the public benefit from disclosure, (2) any commercial benefit to the plaintiff resulting
       from the disclosure, (3) the nature of the plaintiff's interest in the disclosed records, and
3      (4) whether the government's withholding of the records had a reasonable basis in law.

4  Id. These four criteria "are not exhaustive" and "the court may take into consideration 'whatever

5  factors it deems relevant in determining whether an award of attorney's fees is appropriate.'" Id.

6  (internal citations omitted).

7      Neither side has explicitly addressed these factors in its briefing. However, the record

8  before the Court contains sufficient information to evaluate the relevant criteria.

9      Plaintiff is the co-director of the Transactional Records Access Clearinghouse (TRAC), a

10  research organization associated with Syracuse University. According to Plaintiff, TRAC

11  provides the public with information and reports regarding the IRS's performance. Plaintiff

12  asserts that the statistical information she seeks is "critical to TRAC's efforts to monitor and

13  disseminate information on IRS activities, including audit rates, enforcement activities, and

14  criminal prosecutions." (Dkt. No. 8 at 4).

15      Because Ms. Long seeks to disseminate this information sought in this proceeding to the

16  public, there would be a public benefit from disclosure of the records sought by Ms. Long. It

17  also appears that Ms. Long herself stands to gain little if any commercial benefit from the

18  disclosure of the records sought. See, e.g., Long v. U.S. Dept. of Justice, 10 F. Supp. 205, 207

19  (N.D.N.Y 1998) (noting that TRAC is a non-profit organization). Ms. Long's interest in this

20  matter stretches back 30 years and has both public interest and scholarly components. Finally,

21  for the reasons discussed previously, the Court finds that the government's withholding of the

22  records sought by Ms. Long had little basis in law.

23      Therefore, the Court is satisfied that Ms. Long is entitled to an award of her reasonable

24  attorney fees and costs in bringing this motion to enforce the 1976 Consent Order. Plaintiff is

25  directed to file a motion and supporting materials that document her reasonable attorney fees and

26  costs within 30 days of the date of this order.

1

**Conclusion**

2          Although the Consent Order in this matter was entered 30 years ago, there is no dispute

3   that the order remains in effect and that the Court retains jurisdiction to enforce the decree.  By

4   its terms, the 1976 Consent Order requires the IRS, upon proper request, to provide Ms. Long

5   with existing statistical data that are "similar" to the data contained in Report NO-CP:A-232.

6   Because the data contained in AIMS Table 37 are similar to the data contained in Report NO-

7   CP:A-232, the IRS is obliged to produce Table 37 to Ms. Long on proper request.  Therefore,

8   Plaintiff's motion to enforce the consent order is GRANTED.

9          Within 14 days of the date of this order, Defendant is ORDERED to supply Ms. Long

10  with copies of any monthly, quarterly, and year-end AIMS Table 37 reports for fiscal years 2002,

11  2003, 2004, and 2005, as well as any monthly and quarterly reports for fiscal year 2006 that have

12  been compiled as of the date of this order.  Furthermore, Defendant shall, on an ongoing basis

13  and upon proper request by Ms. Long, promptly make available to her for inspection and copying

14  copies of the AIMS Table 37 reports, as long as the agency continues to compile such reports.

15  The Court further finds that Ms. Long is entitled to an award of her reasonable costs and

16  attorney fees incurred in obtaining this order.  Plaintiff is directed to file a motion for attorney

17  fees and costs no later than 30 days from the date of this order.

18         The clerk is directed to send copies of this order to all counsel of record.

19         Dated:   April 3, 2006.

20

21                              s/Marsha J. Pechman
                                Marsha J. Pechman
22                              United States District Judge

23

24

25

26

ORDER
PAGE – 9